**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHASTITY WILLIAMS,                        )
                                          )
    Plaintiff,           )
                                          )
      v.       )
                                          )
LAWRENCE COUNTY CAREER &                  )
TECHNICAL CENTER, LEONARD RICH,           )   Civil Action No. 17-620
MATTHEW MANGINO, ESQUIRE,                 )
ELLWOOD CITY AREA SCHOOL                  )   Magistrate Judge Lenihan
DISTRICT, LEROY CORTEZ, JENNIFER          )
GROSSMAN, DAVID DIGIAMMARINO,             )
STEPHEN FORNATARO, MARK                   )
PANELLA, MARK KIRKWOOD, LAUREL            )
SCHOOL DISTRICT, JEFF                     )   ECF Nos. 33, 36, 38, 40, 42,
HAMMERSCHMIDT, MARY KOSEK,                )   44, 46, 48, 51 & 53
SHENANGO AREA SCHOOL DISTRICT,            )
DENISE PALKOVICH, MOHAWK AREA             )
SCHOOL DISTRICT, SCOTT SINGER,            )
UNION AREA SCHOOL DISTRICT,               )
DEBRA ALLEBACH, NESCHANNOCK               )
TOWNSHIP AREA SCHOOL DISTRICT,            )
JAMES MCFARLAND, WILMINGTON               )
AREA SCHOOL DISTRICT, and ROBERT          )
CURRY,                                    )
                                          )
    Defendants.          )


## OPINION

LENIHAN, M.J.

    Presently before the Court are Motions to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). The Motions will be granted in part and denied in part. The Motions will be

granted as they relate to the § 1983 claims in Count II, and Count III of the Amended Complaint.

The Motions will be denied as they relate to Count I, Count IV, and the municipal liability claim.

Plaintiff, Chastity Williams ("Plaintiff" or "Williams"), initiated this lawsuit on October 6, 2016 pursuant to 42 U.S.C. § 1983 alleging a violation of her constitutional rights under the Fourth and Fourteenth Amendments. Plaintiff also asserts a claim for malicious prosecution in violation of Pennsylvania state law.

## I.    PROCEDURAL HISTORY

Plaintiff initiated this action in the Court of Common Pleas of Lawrence County, Pennsylvania.  Following pre-complaint discovery, she filed a five-count Complaint on April 17, 2017. Because three of these claims arise under 42 U.S. §1983, the case was removed to federal court by Defendants, all but one of whom moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] In response, Plaintiff filed an Amended Complaint on June 9, 2017 and omitted the state law claim for defamation. The same Defendants then moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## II.    STATEMENT OF FACTS

Defendant Lawrence County Career and Technical Center ("the Center") offers vocational and technical education programs to students from eight different school districts, and each of these districts in turn provides funding for the Center. (Am. Compl. ¶ 3, ECF No. 30.) The Center is governed by a Joint Operating Committee ("JOC") comprised of officials from the Center and representatives from each of the eight districts. (Am. Compl. ¶ 4.) Plaintiff brought this action against the Center, the eight school districts, and each of the school districts' representatives on the JOC,[2] (Am. Compl. ¶¶ 2, 9-20), as well as Leonard Rich ("Rich"), the

---

[1] Since the commencement of this action, defendant Mark Kirkwood has died, and no one has entered an appearance on behalf of him or his estate to date.

[2] The eight school districts and their representatives on the JOC who have been named as defendants include: Ellwood City Area School District, Leroy Cortez, and Jennifer Grossman;

Center's director and business manager since October 2013, Matthew Mangino ("Mangino"), the Center's solicitor, and Mary Kosek ("Kosek"), one of the Center's employees. (Am. Compl. ¶¶ 5-7.)

Plaintiff worked as an Assistant Business Manager for the Center from March 2010 until she voluntarily resigned on August 21, 2013 to accept employment at Grove City College. (Am. Compl. ¶¶ 23, 29.) Over the course of her employment, she worked overtime. (Am. Compl. ¶ 28.)

In an October 2013 meeting, Rich was hired by the JOC to serve as the Center's new Director. (Am. Compl. ¶ 33.) At this meeting, the JOC also retained an accounting firm to perform an audit, allegedly due to the Center's financial difficulties. (Am. Compl. ¶¶ 30, 32, 34.) Williams alleges that the auditors were specifically directed to investigate improprieties regarding her overtime compensation and to investigate only the time span that coincided with her employment at the Center. (Am. Compl. ¶¶ 35-37.) The audit concluded that none of the overtime pay had been properly authorized. (Am. Compl. ¶ 38.)

Rich, with the JOC's authorization, reported Plaintiff's alleged criminal conduct and gave the audit report to the Pennsylvania State Police and/or the Lawrence County District Attorney and demanded that she be criminally charged for the theft offenses. (Am. Compl. ¶ 41.) On March 7, 2014, the District Attorney filed a criminal complaint against Plaintiff, charging her with three felony offenses for her alleged theft of $92,412.92 from the Center. (Am. Compl. ¶ 43.)

---

New Castle Area School District, David Digiammarino, Stephen Fornataro, Mark Panella, and Mark Kirkwood; Laurel School District and Jeff Hammerschmidt; Shenango Area School District and Denise Palkovich; Mohawk Area School District and Scott Singer; Union Area School District and Debra Allebach; Neshannock Township Area School District and James McFarland; Wilmington Area School District and Robert Curry.

The Affidavit of Probable Cause prepared by the police officer and attached to the Criminal Complaint listed Rich and the audit report as the two sources of information upon which the felony theft charges were based. (Am. Compl. ¶ 44.) As a result of these charges, Plaintiff alleges that she was required to submit to processing and fingerprinting by the Pennsylvania State Police, travel to and present herself at any scheduled court proceedings, expend time and effort preparing her defense with her attorneys, pay substantial legal fees, and endure the prospect of going to trial in order to prove her innocence. (Am. Compl. ¶ 45.) In addition, she alleges that her prosecution was highly publicized in newspaper articles featuring comments made by Rich and members of the JOC. (Am. Compl. ¶ 47.)

After a preliminary hearing on October 8, 2014, all charges against Plaintiff were dropped or dismissed. (Am. Compl. ¶ 57.) She alleges that after this hearing, Rich and some or all of the representatives on the JOC wrote a letter urging the Lawrence County District Attorney to refile the charges. (Am. Compl. ¶ 58.)

Plaintiff alleges that the Defendants provided the auditing firm and subsequently the Lawrence County District Attorney with false and/or incomplete information suggesting that a crime had occurred, while ignoring and/or withholding additional information to the contrary. (Am. Compl. ¶ 48.) She further alleges that Defendants did not disclose complete or accurate information to cause her prosecution in order to further their own interests. (Am. Compl. ¶ 53.) In particular, Plaintiff alleges that Defendants were motivated to have her prosecuted so that they could recover the allegedly stolen overtime pay under an insurance policy that would only provide coverage if the loss resulted from fraudulent or criminal conduct.[3] (Am. Compl. ¶ 54.) Plaintiff further contends that Defendants wanted her to be prosecuted because it was politically

_____

[3] Plaintiff believes that the Center received approximately $89,000 under the insurance policy. (Am. Compl. ¶ 55.)

advantageous to them to create the perception that the Center's financial problems were not attributable to waste or mismanagement of public funds, but rather, caused by a thieving employee. (Am. Compl. ¶ 56.)

Plaintiff further alleges that she suffered great reputational harm because of the unfounded allegations and felony prosecution, which caused her to be terminated from her job at Grove City College in April 2014. (Am. Compl. ¶ 55.) Since then, she has been unable to obtain substitute employment and was unemployed until she started her own business in July 2015, where she earns less than she earned at Grove City College. (Am. Compl. ¶ 60.) Plaintiff alleges that she continues to be prevented from obtaining employment in her chosen field of school administration due to her felony prosecution and stringent background checks required to work in educational institutions. (Am. Compl. ¶ 61.)

Plaintiff has brought a Pennsylvania state law claim of malicious prosecution against the individual Defendants. (Am. Compl. ¶¶ 62-66.) She has also asserted § 1983 claims of malicious prosecution under the Fourth and Fourteenth Amendments, and of defamation under the Fourteenth amendment[4], against all Defendants. (Am. Compl. ¶¶ 67-, 78-88.) Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## III.  STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the courts apply the following standard, as recently reiterated by the court of appeals:

---

[4] Although Plaintiff characterizes Count IV as a defamation claim brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment, the jurisprudential underpinning of this claim is violation of her Fourteenth Amendment due process liberty interest in reputation, a constitutional tort.

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S. Ct. 1937.

*Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786-87 (3d Cir. 2016).

## IV.    ANALYSIS

### A.    <u>Pennsylvania Malicious Prosecution Claim</u>

Count I of Plaintiff's Amended Complaint alleges malicious prosecution in violation of Pennsylvania common law.  In order to state a claim for malicious prosecution under Pennsylvania law, a plaintiff must plead facts that establish that Defendants (1) instituted criminal proceedings, (2) without probable cause, (3) with actual malice, and (4) that the proceedings ended in Plaintiff's favor.  *Cosmas v. Bloomingdale Bros. Inc.*, 600 A.2d 83, 85 (Pa. Super. Ct. 1995). Providing information to a district attorney or officer or making an accusation of criminal misconduct does not ordinarily constitute initiation of a criminal proceeding. *Bradley*

*v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 711 (Pa. Super. Ct. 2001). However, when a person knowingly provides false information or demands prosecution, the attorney or officer can no longer intelligently exercise his discretion in choosing whether to bring charges. *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 464 (3d Cir. 1993) (citing *Byers v. Ward,* 84 A.2d 307, 309 (Pa. 1951) (defendants accused of providing false testimony and documentary evidence)), *overruled on other grounds by, Miller v. CIGNA Corp.,* 47 F.3d 586 (3d Cir. 1995). *See also Burgos v. Morgan, Lewis & Brockius, LLP,* No. 735 EDA 2015, 2017 WL 57879, at *6-8 (Pa. Super. Ct. Jan. 5, 2017.) As such, the party providing false information or demanding prosecution is responsible for initiating the proceedings. *Id.*

Defendants argue that Plaintiff cannot satisfy the first element of this claim because none of them initiated the criminal proceedings against her; therefore, they argue, this Count should be dismissed in its entirety. Plaintiff alleges that Leonard Rich reported her supposed criminal conduct, turned the audit report over to Pennsylvania State Police and the Lawrence County District Attorney, and demanded that she be prosecuted. (Am. Compl. ¶ 43.) She further alleges that all of the Defendants recommended that Plaintiff's supposed crime be reported and her prosecution demanded. (Am. Compl. ¶ 47.) Plaintiff also contends that the information given to the police was incomplete "and/or" false. (Am. Compl. ¶ 48.)

While Rich denies knowingly making false statements, the Court cannot resolve this factual issue at this stage of litigation. Plaintiff has sufficiently alleged that Leonard Rich, through his false statements and his demands of prosecution, maliciously initiated proceedings against the Plaintiff without probable cause, and that these proceedings ended in Plaintiff's favor. Because the Complaint alleges plausible facts establishing all four elements of a Pennsylvania

malicious prosecution claim, the Court will deny the motions to dismiss Count I as to Defendant Leonard Rich.

While the other Defendants did not directly demand Plaintiff's prosecution, they allegedly caused the initiation of her prosecution and endorsed the decision through their representation, participation, or influence on the Joint Operating Committee and/or management of the Center. (Am. Compl. ¶ 47.) As a result, they too allegedly initiated the proceedings against Plaintiff by demanding that she be prosecuted. (Am. Compl. ¶ 63.) Given the factual uncertainties regarding whether or not this is the case, the Court must deny the motion to dismiss as to all Defendants.

**B.** **Section 1983 Claims**

Plaintiff alleges three counts under 42 U.S.C. § 1983, which states in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Therefore, to state a claim for relief under § 1983, Plaintiff must demonstrate both that Defendants were acting under color of state law and that a constitutional violation was directly caused by Defendants' conduct. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). In this case, Defendants argue that Plaintiff has failed to plead sufficient facts to establish a plausible constitutional violation in regard to Count II ("Violation

of Fourth Amendment"), Count III ("Violation of Fourteenth Amendment"), and Count IV

("Defamation – Fourteenth Amendment").[5]

### 1.       Count II--Violation of Fourth Amendment

In Count II, Plaintiff alleges a claim of malicious prosecution in violation of the Fourth

Amendment.[6] In order to prevail on such a claim, Plaintiff must establish that: (1) Defendants

initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the

proceeding was initiated without probable cause; (4) the Defendants acted maliciously or for a

purpose other than bringing the Plaintiff to justice; and (5) Plaintiff suffered a deprivation of

liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v.

Borough of Beechwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*,

318 F.3d 497, 521 (3d Cir. 2003)). In this case, Defendants argue that Plaintiff has failed to

satisfy the fifth element.[7]

Third Circuit precedent dictates that prosecution without probable cause alone is not a

constitutional tort; instead, there must be a "deprivation of liberty consistent with the concept of

seizure" in order to implicate the Fourth Amendment. *Id.* at 603. To satisfy this element, a

plaintiff must be subject to either pretrial custody or "some onerous types of pretrial, non-

custodial restrictions," such as limitations on travel outside the jurisdiction. *Id.*; *see also Gallo v.*

---

[5] None of the Defendants contest that they were acting under color of state law; therefore, the Court will assume without deciding that they were.

[6] In the original Complaint, this count was entitled "Malicious Prosecution – Fourth Amendment," while in the Amended Complaint it is entitled simply "Violation of the Fourth Amendment." Despite the change in headings, both the original and Amended Complaints assert a malicious prosecution claim. *See* Am. Compl. ¶¶ 62-67. A similar change was made with regard to the title of Count III, but again the substance remains the same. *See* Am. Compl. ¶¶ 74-81.

[7] Defendants also argue that Plaintiff has not alleged requisite personal involvement by each of the defendants. Because incurable defects with the fifth element warrant dismissal, the Court need not analyze this argument.

*City of Philadelphia*, 161 F.3d 217, 224 (3d Cir. 2003) (holding that, although it was a close question, travel restrictions including arrest, requirement to post bond, prohibition from travelling outside the geographic area, requirement to contact pretrial services weekly, and requirement to attend all court hearings amounted to a seizure). Compelled attendance at hearings and court proceedings does not rise to the level of a seizure necessary to satisfy this element. *See, e.g., DiBella* 407 F.3d at 603; *Penberth v. Krajnak*, 347 F. App'x 827, 829 (3d Cir. 2009) (plaintiff not seized for purposes of Fourth Amendment where he was detained for 35 to 40 minutes, not required to post bail or communicate with pre-trial services, and under no travel restrictions).

Most recently, the Third Circuit held that a malicious prosecution plaintiff was seized for purposes of the Fourth Amendment when she had been interrogated by police; was required to fly from her home in California to Pennsylvania for her arraignment; spent more than an hour being fingerprinted and photographed at a police station, was required to post unsecured bail in the amount of $50,000; was told that the bond would be forfeited if she did not attend all court proceedings; and consequently, she was compelled to travel from California to Pennsylvania for twelve (12) pre-trial conferences in one year; and that the trial did not occur until sixteen (16) months after she had been charged. *Black v. Montgomery Cnty.*, 835 F.3d 358, 367-68 (3d Cir. 2016). The *Black* court emphasized that "'[p]re-trial restrictions of liberty aimed at securing a suspect's court attendance are all "seizures" . . . [because] the difference between detention in jail, release on bond, and release subject to compliance with other conditions is in the *degree* of restriction on the individual's liberty, not in the *kind* of restriction.'" 835 F.3d at 367 (quoting *Schneyder v. Smith*, 653 F.3d 313, 320 (3d Cir. 2011)) (emphasis in *Schneyder*) (explaining Third Circuit's interpretation of Ginsburg concurrence in *Albright v. Oliver*, 510 U.S. 266, 276-

281 (1994)).

In the present case, Plaintiff alleges that she was subject to processing and fingerprinting, was required to appear in court, was compelled to expend time and money preparing her case, and was forced to endure the prospect of going to trial. (Am. Compl. ¶ 45.) Plaintiff was not arrested or held in custody at any time, and was able to travel freely except for when she was required to appear in court. Nevertheless, Plaintiff asserts that these "attendant disruptions and restrictions upon Plaintiff's life, travel, and employment" constitute a seizure within the meaning of the Fourth Amendment. The Court disagrees; Plaintiff was subject to almost exactly the same restrictions in *DiBella* that were held not to constitute a seizure. *See DiBella*, 407 F.3d at 600. Even considering the added impingement on Plaintiff's liberty interest from processing and fingerprinting, Plaintiff was not subject to conditions akin to those in *Gallo* or *Black*.

Plaintiff argues that the Third Circuit adopted Justice Ginsburg's concept of the "continuing seizure" [8] in *Schneyder*, 653 F.3d at 319. Its application here, however, does not lead to the conclusion that Plaintiff was subject to a seizure. In *Schneyder*, the Third Circuit endorsed the idea that an "arrested person's seizure was deemed to continue even after release from official custody." *Id. Schneyder* also clarified that "substantial pre-trial restrictions on liberty – most prominently, custodial detentions – are 'seizures' when they are imposed in order to compel a court appearance." *Id.* at 321. Plaintiff herein alleges only that she was processed and fingerprinted. (Am. Compl. ¶ 45.) Plaintiff's allegations of time and effort in preparing her case, and expenditure of legal fees are not relevant to the seizure analysis. The only other relevant allegation is that Plaintiff attended a preliminary hearing on October 8, 2014, wherein the charges were dismissed seven (7) months after the filing of the criminal complaint. (Am.

---

[8] This concept was set forth in a plurality opinion in *Albright v. Oliver*, 510 U.S. 266, 278 (1994).

Compl. ¶¶ 43, 57.) There is no allegation that Plaintiff posted bond or was limited in her movements. As such, Plaintiff has not alleged a deprivation of liberty necessary to fulfill the fifth element of this claim.

In a civil rights case, a court must sua sponte allow a plaintiff to amend his or her complaint unless it would be inequitable or futile to do so. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). Plaintiff's original complaint did not allege any restrictions on her liberty that would constitute a seizure. Defendants argued that Plaintiff failed to allege seizure in her original complaint in their original 12(b) motions; however, Plaintiff's Amended Complaint did not remedy this deficiency or allege any additional facts supporting the finding of a seizure. Because Plaintiff has repeatedly failed to allege facts sufficient to make out the fifth element of a § 1983 malicious prosecution claim, any further attempt to amend would be futile. Therefore, the Court will dismiss Count II with prejudice.

### 2.      Count III--Violation of Fourteenth Amendment

In Count III, Plaintiff broadly alleges a violation of her Fourteenth Amendment rights. While the facts used to support this Count center around the same core facts giving rise to the previous malicious prosecution claim, Plaintiff insists in her Brief in Opposition to Motions to Dismiss that this Count is not a malicious prosecution claim. Defendants argue that there is no violation of the Fourteenth Amendment in malicious prosecution cases based on *Albright v. Oliver*, 510 U.S. 266 (1994).

In *Albright*, the Supreme Court held in a plurality opinion that a § 1983 claim for malicious prosecution cannot be brought under the Fourteenth Amendment. *Id.* at 273. The Court held that when "a particular Amendment 'provides an explicit textual source of constitutional protection' . . . 'that Amendment, not the more generalized notion of "substantive due process,"

must be the guide for analyzing these claims.'" *Id.* (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).

To the extent that this Count is an attempt to state a § 1983 malicious prosecution claim in violation of Plaintiff's Fourteenth Amendment rights, *Albright* dictates that it must be dismissed. Because the Fourth Amendment provides an explicit textual source of protection against malicious prosecution, Plaintiff cannot bring a malicious prosecution claim under the more general provisions of the Fourteenth Amendment.[9] *See id.* at 274. Therefore, this Count will be dismissed as it relates to all Defendants. Because this Count fails as a matter of law, any further attempt to amend would be futile. Therefore, the Court will dismiss Count III with prejudice.

### 3. Count IV Defamation—Fourteenth Amendment

Plaintiff alleges defamation in violation of her Fourteenth Amendment rights. Defendants argue that Plaintiff has failed to sufficiently allege a violation of her rights guaranteed by the Fourteenth Amendment.[10] Specifically, Defendants contend that Plaintiff has failed to satisfy the "stigma-plus" test required to state a claim for defamation under the Fourteenth Amendment because she has not been deprived of a property interest.

---

[9] Plaintiff acknowledges in her Brief in Opposition to Motions to Dismiss that a § 1983 malicious prosecution claim cannot be based on the Fourteenth Amendment's guarantee of substantive due process, but may be asserted on procedural due process grounds. However, she makes no allegations of any violations of the procedural component of the Due Process Clause, and instead advances an argument that her substantive rights have been violated.

[10] Defendants also argue that Plaintiff's § 1983 defamation claim is subject to Pennsylvania's one-year statute of limitations for defamation, and thus is time-barred. The statute of limitations for § 1983 claims in Pennsylvania is governed by the two-year statute of limitations for personal injury actions. *See Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *Hall v. City of Philadelphia*, 828 F. Supp. 365, 367 (E.D. Pa. 1993). As such, given that the allegedly defamatory statements may have been made after October 6, 2014, two years prior to the filing of this action, the Court cannot conclude that Plaintiff's claims are time-barred.

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty or property, without due process of law." U.S. CONST. amend. XIV § 1. This guarantee encompasses a substantive and procedural component. *Nicholas v. Pa. State Univ.,* 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992). In her omnibus Response to Defendants' Motions to Dismiss (ECF No. 57), Plaintiff argues the procedural and substantive components of the Due Process Clause. (ECF No. 57 at 14-17.)

a. <u>Substantive Due Process</u>

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000). Under a substantive due process analysis dealing with executive actions, "'the threshold question is whether the behavior of [that] officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). That is, "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive,' or by means of government conduct so egregious that it 'shocks the conscience[.]'" *Nicholas*, 227 F.3d at 139 (internal citations omitted).

This conscience-shocking concept "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848. The kind of official conduct most likely to rise to the conscience-shocking level is action that is intended to injure, and that is not justified

by any governmental interest. *Id.* at 849. Where state officials enjoy the luxury of "having time to make unhurried judgments," their "deliberate indifference" to an individual's welfare may be conscience-shocking. *Id.* at 853. Deliberate indifference might exist even "without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006).

Plaintiff has alleged plausible facts to suggest that Defendants' behavior was so egregious and outrageous that it may be said to shock the conscience. If Plaintiff's allegations are proved to be true, it shocks the contemporary conscience that Defendants caused a former employee's criminal prosecution for theft by knowingly supplying false and/or incomplete information to auditors in an effort to cover their own deficiencies in managing the finances of the Center. Defendants had the luxury of time in making the alleged decisions to supply false/and or incomplete information to auditors. As educational professionals, Defendants would understand that a criminal prosecution could foreclose Plaintiff's ability to work for educational institutions in the future. Clearly, the allegations of the Amended Complaint state plausible facts that show Defendants' improper motive.

The United States Court of Appeals indicated in *Nicholas* that property interests for purposes of the substantive due process clause are "not determined by reference to state law, but rather depends upon whether that interest is 'fundamental' under the United States Constitution." 227 F.3d at 140 (citing *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (substantive due process rights are created only by the Constitution)).

The United States Court of Appeals for the Third Circuit has stated that "the liberty to pursue a calling or occupation . . . is secured by the Fourteenth Amendment." *Thomas v. Independence Twp.,* 463 F.3d 285, 297 (3d Cir. 2006) (citing *Piecknick v. Commonwealth of*

*Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994)).  *See also Pioneer Aggregates, Inc. v. Pa. Dep't of Envtl. Prot.,* 540 F. App'x 118, 125 (3d Cir. 2013) (right to pursue occupation is protected right).  Reputational injury that decreases an individual's ability to earn a living, however, is not sufficient to warrant the protection of substantive due process.  *Boyanowski,* 215 F.3d at 399-404 (Defamatory statements that curtail a plaintiff's business opportunities do not support a substantive due process claim.)  Here, Plaintiff Williams alleges that she "continues to be prevented from obtaining employment in her traditional and chosen field of school administration due to her felony prosecution and stringent background checks required to work in educational institutions."  (Am. Compl. ¶ 61.)  Plaintiff, therefore, has sufficiently alleged the violation of a protected interest for purposes of substantive due process protection.

At the motion to dismiss stage, Plaintiff has averred enough facts to state a plausible claim for deprivation of her Fourteenth Amendment substantive due process rights.  Therefore, Defendants' Motions to Dismiss on this issue will be denied.

b. Procedural Due Process

Plaintiff also argues a violation of due process based on the stigma-plus theory.  (ECF No. 57 at 15-16.)  A stigma-plus claim is "a due process claim for deprivation of a liberty interest in reputation[.]"  *Hill*, 455 F.3d at 236.  "In the public employment context, the stigma-plus test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest."  *Id.* at 236 (internal quotation marks and citation omitted).  Importantly, the United States Court of Appeals for the Third Circuit in *Hill* further stated that "[t]he creation and dissemination of a false and defamatory impression is the 'stigma' and the termination is the 'plus.'"  *Id.*

Although the "plus" prong is typically termination of employment, reputational damage that occurs in the course of, or is accompanied by, a change or extinguishment of a right or status guaranteed by state law or the Constitution is actionable. *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (discussing *Paul v. Davis*, 424 U.S. 693, 701-12 (1976)); *D&D Assoc., Inc. v. Bd. of Educ. of N. Plainfield*, 552 F. App'x 110, 113 (3d Cir. 2014); *Kahan v. Slippery Rock Univ. of Pa.*, 50 F. Supp.3d 667, 711 (W.D. Pa. 2014). The law in this circuit is clear that the right "to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments." *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994). This protection only extends to state actions "that threaten to deprive persons of the right to pursue their chosen occupation." *Id.* (internal citations and quotation omitted). "It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Id.* (internal citation and quotation omitted).

In order to state a claim regarding the "stigma" prong of the test, plaintiff must allege that the "purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Hill*, 455 F.3d at 236 (internal quotation marks and citations omitted).

First, with regard to the "stigma" prong of Plaintiff's stigma-plus claim, Plaintiff alleges that her prosecution on the three felony charges for theft was highly publicized in newspaper articles featuring comments made by Rich and members of the JOC about the criminal prosecution. (Am. Compl. ¶ 46.) She further alleges that Defendants published defamatory statements to the auditing firm, the Pennsylvania State Police, the Lawrence County District Attorney, and via the Criminal Complaint and Affidavit of Probable Cause. (Am. Compl. ¶ 84.) She also alleges that the felony charges were dismissed and therefore the comments made by

Rich and members of the JOC regarding the criminal prosecution were false. (Am. Compl. ¶ 57.) Reading the Amended Complaint in its entirety and affording Plaintiff every favorable inference therefrom, it appears that Plaintiff has plausibly alleged the "stigma" prong of her stigma-plus claim.[11] *See, e.g. Hill*, 455 F.3d at 236-37.

As to the "plus" element, Plaintiff alleges that she was terminated from Grove City College soon after Defendants made statements to the media. (Am. Compl. ¶ 59.) Plaintiff does not allege that Lawrence County Career and Technical Center terminated her. Nor does she allege any facts to suggest that she was constructively discharged from the Center.[12] Instead, in her Omnibus Response to Defendants' Motions to Dismiss, Plaintiff argues that the "plus" element generally requires the alteration or extinguishment of some sort of constitutional right as a result of the stigma. (ECF No. 57 at 15.) She argues that she "was terminated from her position at Grove City College after the Defendants' accusations of felony theft came to light, and the accompanying stigma has prevented her from obtaining employment in her chosen field of school administration." (ECF No. 57 at 15 (citing Am. Compl. ¶¶ 59-61)).

There is substantial argument in Defendants' submissions as to whether a third-party termination (termination by Grove City College) can satisfy the "plus" element in a stigma-plus claim. Here, because Plaintiff argues the extinguishment of her constitutional right to pursue employment in her chosen field of school administration as a result of the stigma, she has stated

---

[11] The Amended Complaint as a whole suggests that Defendants knew or should have known from the inception of the audit and subsequent filing of criminal charges, that Plaintiff was innocent of any wrongdoing.

[12] The United States Court of Appeals for the Third Circuit has stated that a resignation will be deemed involuntary and thus a constructive discharge for purposes of the Due Process Clause under only two circumstances: "(1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Hill*, 455 F.3d at 233 (citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999)).

a plausible claim for relief.

Therefore, the Court will deny Defendants' Motions to Dismiss Count IV of the Amended Complaint because Plaintiff has alleged a plausible claim for relief under the stigma-plus theory pursuant to the Fourteenth Amendment.

### C.    <u>Municipal Liability</u>

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. §1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that result in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and

that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

Defendant School Districts argue that all § 1983 claims against them must be dismissed because Plaintiff has alleged only respondeat superior liability. That is, Plaintiff has failed to allege a policy, custom, or practice that resulted in the constitutional violation. Plaintiff responds that she is not required to allege similar treatment of other individuals to show a custom or practice because under certain circumstances, a single decision to take a particular action can establish the kind of official policy required by *Monell*.

Plaintiff is correct that she need not show a series of similar acts to establish municipal liability. Municipal liability may also be established by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (plurality).

Here, Plaintiff alleges that the Lawrence County Career and Technical Center is governed by a Joint Operating Committee ("JOC") comprised of officials from the Center and representatives from each of the eight School Districts. (Am. Compl. ¶ 4.) It is plausible that representatives from each of the Defendant School Districts were delegated authority to act on behalf of the School Districts on the Joint Operating Committee. It is also plausible that the decisions of the representatives and the bases for them were ratified by the School Districts.

Consequently, Plaintiff has stated a plausible claim for municipal liability pursuant to *Pembaur.* Discovery may reveal whether or not *Pembaur* is controlling. Consequently, Defendants may revisit this issue on summary judgment. Therefore, the Court will deny Defendant School Districts' Motions to Dismiss the municipal liability claim.

### D. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, government officials are put on notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

In determining whether qualified immunity applies, the courts conduct a two-pronged inquiry. *Pearson*, 555 U.S. at 232; *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, the court must determine "whether the facts that the plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2002). If, however, the plaintiff can establish a constitutional violation, then the court must proceed to the second prong and determine "'whether the right at issue was "clearly established" at the time of defendant's

alleged misconduct.'" *Spady,* 800 F.3d at 637 (quoting *Pearson*, 555 U.S. at 232). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). In conducting this analysis, courts have the discretion to decide which of the two prongs should be addressed first based on the circumstances of the particular case. *Pearson*, 555 U.S. at 236.

Here, because the Court has determined that Plaintiff has alleged a claim for violation of her due process rights[13] pursuant to 42 U.S.C. § 1983, the Court must now determine whether the rights were "clearly established" at the time of the Defendants' alleged misconduct. *Spady,* 800 F.3d at 637.

The Third Circuit directs that the Court "must first frame the precise contours of that right." *Id.* at 638. Plaintiff's claim in Count IV of the Amended Complaint is that Defendants violated her procedural and substantive due process rights pursuant to the Fourteenth Amendment.

This Court, however, must "not define clearly established law at a high level of generality." *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The Court is "required to frame the right at issue 'in a more particularized, and hence more relevant, sense,' . . . 'in light of the case's specific context, not as a broad general proposition[.]'" *Id.* (internal citations omitted).

Here, the specific context is a school administrator who is falsely accused of theft by her former employer and committee members in order to cover up their own deficiencies in handling school finances, who then publishes information about the criminal prosecution to the media and

---

[13] *See* analyses at IV.B.3. a. & b., *supra.*

others, resulting in the termination of her employment by a third party, and her inability to secure employment in her chosen profession of school administration because of the stigma associated with the defamatory publication. The specific constitutional rights under the Due Process Clause in this context are 1) the right to be free from executive actions that are so egregious, and so outrageous, that they may fairly be said to shock the contemporary conscience, and that result in the violation of the fundamental right to pursue a calling or occupation; and 2) the right to be free from reputational damage that results in the extinguishment of the fundamental right to pursue a calling or occupation.

Although there need not be a case directly on point, "existing precedent must have placed the . . . constitutional question *beyond* debate." *Id.* at 639 (citing *al-Kidd*, 563 U.S. at 741) (emphasis added by *Spady* court). Qualified immunity will be denied where "at the time of the challenged conduct, the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right." *Al-Kidd,* 563 U.S. at 741.

Here, with regard to Plaintiff's claim involving the stigma-plus test, United States Supreme Court and Third Circuit precedent have established that damage to reputation states a constitutionally cognizable violation when it is accompanied by the extinguishment of the fundamental right to pursue one's chosen occupation. *See Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994); *Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir. 1984) (citing *Paul v. Davis*, 424 .S. 693, 701-06 (1976)); *Machesky v. Hawfield*, Civil Action No. 07-9, 2008 WL 614819, at *6 (W.D. Pa. March 4, 2008). Taking all of the allegations of Plaintiff's Amended Complaint as true, reasonable officials in the education profession would have believed they were violating clearly established law by falsely accusing a

former employee of theft in order to cover up their own deficiencies in handling school finances, thereby causing the employee's inability to find future employment in her chosen field of school administration (due to the stringent background checks required to work in educational institutions), when they published information about the criminal prosecution to the media and others. Therefore, the Court must deny qualified immunity at this time with regard to Plaintiff's alleged violation of her Fourteenth Amendment procedural due process protections. If the developed record does not support Plaintiff's allegations, the Defendants may revisit the issue of qualified immunity on summary judgment.

Similarly, because the Court has determined that Plaintiff has alleged a claim for violation of her substantive due process rights, the Court must now determine whether the right was "clearly established" at the time of Defendants' alleged misconduct. *Spady,* 800 F.3d at 637. As discussed above, the United States Court of Appeals for the Third Circuit has stated that "the liberty to pursue a calling or occupation . . . is secured by the Fourteenth Amendment." *Thomas v. Independence Twp.,* 463 F.3d 285, 297 (3d Cir. 2006) (citing *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994)). In addition, the law is clear that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive,' or by means of government conduct so egregious that it 'shocks the conscience[.]'" *Nicholas*, 227 F.3d at 139 (internal citations omitted). Taking all of the allegations of Plaintiff's Amended Complaint as true, reasonable officials would have believed they were violating clearly established law by falsely accusing a former employee of theft in order to cover up their own deficiencies in handling school finances, then publishing information about the criminal prosecution to the media and others, thereby causing the employee's inability to find future

employment in her chosen field of school administration. The allegations demonstrate improper motive, and the luxury of time to make unhurried decisions regarding the details given to the auditors and the decision to communicate with the media. Therefore, the Court must deny qualified immunity at this time with regard to Plaintiff's alleged violation of her Fourteenth Amendment substantive due process protections. If the developed record does not support Plaintiff's allegations, the Defendants may revisit the issue of qualified immunity on summary judgment.

### E. PA Political Subdivisions Tort Claim Act

Numerous Defendants argue that they are immune from this action based upon the Pennsylvania Political Subdivisions Tort Claims Act, 42 Pa.C.S. § 8541 *et seq*. This statute is not applicable to this case for two reasons. First, it applies only to state law claims, meaning that it could only potentially apply to Count I in this case. Second, and more decisively, 42 Pa.C.S. § 8550 states that immunity shall not apply in cases involving "actual malice or willful misconduct." Since Count I, the only count that this immunity could potentially apply to, alleges malicious prosecution, an inherently willful and malicious cause of action, none of the Defendants can claim immunity under this statute in light of the allegations of the Amended Complaint. *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000).

### F. High Official Immunity

Most named Defendants also contend that they are immune from this action through the state common law doctrine of high official immunity. As with the Political Subdivisions Tort Claims Act, this doctrine applies only to state law claims, so it can only potentially offer immunity with respect to Count I. To qualify for this immunity, defendants must (1) be "high public officials" who (2) were acting in the course of their official duties. *Feldman v. Hoffman*,

107 A.3d 821, 826-27 (Pa. Commw. Ct. 2014). Whether an individual is a "high public official" must be determined on a case-by-case basis, *id.*, and given the factually intensive nature of this inquiry, it is generally not appropriate to determine immunity on a motion to dismiss. *See Ferrone v. Onorato*, 439 F. Supp. 2d 442, 455 (W.D. Pa. 2006). Because the Court is unable to determine whether any of the Defendants are "high public officials," on this undeveloped record, the Court will not dismiss any Defendants from this case at the motion to dismiss stage on the basis of high official immunity.

## V.     CONCLUSION

For the above reasons, Defendants' Motions to Dismiss (ECF Nos. 33, 36, 38, 40, 42, 44, 46, 48, 51 & 53) will be granted as they relate to the § 1983 claims in Count II and Count III of the Amended Complaint. The Motions will be denied as they relate to Count I, Count IV and municipal liability.


An appropriate Order will follow.

DATED: October 26, 2017


                              BY THE COURT


                              _____
                              LISA PUPO LENIHAN
                              United States Magistrate Judge